**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**George Herman GRAVES, Defendant-**
**Appellant.**

**No. 27998.**

United States Court of Appeals,
Fifth Circuit.

June 18, 1970.

Rehearing Denied Aug. 10, 1970.

George Herman Graves, pro se, Walter L. Robison, Jacksonville, Fla. (Court-appointed) for defendant-appellant.

John L. Briggs, U. S. Atty., Orlando, Fla., Samuel S. Forman, John W. Caven, Jr., Asst. U. S. Attys., Jacksonville, Fla., for plaintiff-appellee.

Before BELL, COLEMAN and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

This direct criminal appeal from a conviction for check forgeries presents questions involving the producibility under the Jencks Act, 18 U.S.C. § 3500, of certain Federal Bureau of Investigation interim report forms prepared by the special agent who investigated the case. Also brought into issue are the adequacy of the Trial Judge's voir dire examination regarding the production of these reports, the adequacy of the proof of venue, and the sufficiency of the proof of the violations charged. We conclude that reversible error was not committed in the court below and, accordingly, affirm the judgment of conviction.

George Herman Graves was tried and convicted on a two-count indictment charging him with violations of 18 U.S.C. § 2314. Count one charged that Graves had transported or caused to be transported in interstate commerce a falsely made and forged security, that is, a check. Count two made a similar charge with respect to a second check. Both checks were drawn on the account of the Magnolia Trust Company, Jackson, Mississippi, and each was dated April 8, 1968. The checks, showing the bank name to be Jackson-Hinds Bank, Jackson, Mississippi, were made payable to a "John W. Howell." An official of that bank testified in the trial court that the bank had changed its name from Jackson-Hinds to Mississippi Bank and Trust in January 1968. He also testified that

the Magnolia Trust Company's account with the bank had been closed on June 26, 1963, and that the names appearing on the checks as drawers had not been authorized to sign Magnolia Trust checks when the account was open. The persons who accepted the checks for cashing identified Graves as the passer using the name "John W. Howell." The check involved in count one of the indictment was cashed at a Jordan Marsh store by a Mrs. Anthony, who testified that she lived in "Orlando." This check was stamped "For Deposit Only, JORDAN MARSH-FLA-ORLANDO." The stamp also reads "Pay to the First National Bank at Orlando, Fla." and bears the deposit date of April 12, 1968. The check involved in count two of the indictment was cashed at a W. T. Grant store in "Winter Park" by the store manager there, a Mr. Boyd. Boyd testified that he lived in Altamont Springs, Florida. The check he cashed bears, as the earliest deposit stamp (April 15, 1968), the following: "Pay Any Bank, P.E.G., The Commercial Bank at Winter Park, Florida."

At defendant's trial, the Government's first witness was Robert C. Ball, a special agent for the FBI. Ball testified that he had investigated a matter involving Graves and that he had obtained two checks. The checks were produced and received in evidence. Eddie Hayden, who had been employed as the assistant credit manager at the Jordan Marsh store in Orlando in April 1968, stated on cross-examination by Graves's counsel that he had been interviewed by Ball when the latter was investigating the check forgery. He said that Ball had made notes during this interview. Graves's attorney then requested that the notes be produced by the Government under the Jencks Act.

In response to defendant's request, the Government stated that it had no Jencks Act statement, although it did have a "memorandum prepared at a later date by an agent, but * * * it doesn't come under this rule." The District Judge deferred ruling on defendant's request.

Boyd then testified that he too had made a statement to an FBI agent before the trial. Graves requested the production of this statement. The Government again declined, and the District Judge made no ruling on the request. After another witness for the Government had testified, Graves renewed his requests for production of the statements or notes. This time, the Court excused the jury to decide the question, and Ball was recalled to the stand.

Ball now testified that he had with him certain documents bearing the serial number FD-302 which were known as interim report forms. Ball had prepared these reports, which he initialed, on the basis of handwritten notes he had made while interviewing the prosecution witnesses. He had destroyed the notes after he had compared them with the finished reports in a check for possible error. One of the reports, none of which was signed by the interviewees, contained a direct quotation. Ball stated that, except for this one quotation, the reports and notes represented his personal abbreviation or shorthand reflection of the results of the interviews and contained his summary or interpretation of what the witnesses had said. Ball further stated that, after completing an interview, he customarily would quickly review his notes with the interviewee to ensure that the notes were not erroneous.

After Ball was again excused, the District Court denied Graves's requests for production of the interim reports on the ground that the "evidence clearly showed the notes were destroyed, and these statements [the interim reports] here are simply the wordings of the agent."

On this appeal Graves contends principally that the Jencks Act required the production of the FBI interim reports for his examination and use in attempting to impeach the Government's witnesses. He also contends that the District Court erred when it failed to conduct a voir dire examination immediate-

ly after defendant's requests for the reports were made and when it failed to conduct an in camera inspection of the reports after the matter of producibility was finally reached.

## I.

■ The Jencks Act, 18 U.S.C. § 3500, codifying the holding in Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L. Ed.2d 1103 (1957), affords defendants in criminal cases means of obtaining access to certain types of Government documents useful for the cross-examination of prosecution witnesses. Any statement within the ambit of the Jencks Act must be produced upon demand by the defendant when the witness who has made the statement has testified as a witness for the Government. Matthews v. United States, 5 Cir., 1969, 407 F.2d 1371, 1375. The Act does not authorize fishing expeditions by the defendant, however, and use of statements under the Act is restricted to impeachment. Palermo v. United States, 360 U.S. 343, 349, 79 S.Ct. 1217, 1223, 3 L.Ed.2d 1287 (1959); United States v. Montos, 5 Cir., 1970, 421 F.2d 215.

The Act reads in pertinent part:

"(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) to an agent of the Government shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

"(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter

of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

\* \* \* \* \* \*

"(e) The term 'statement' as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

"(1) a written statement made by said witness and signed or otherwise adopted or approved by him; or

"(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement."

18 U.S.C. § 3500.

Graves argues that the interim reports prepared by Agent Ball were producible under the Act, both after Ball had testified on direct examination, as section 3500(e) (1) statements made and signed by him, and after the other prosecution witnesses had testified, as section 3500 (e) (2) recordings or transcriptions that were substantially verbatim recitals of their statements to Ball which had been prepared contemporaneously with the making of these oral statements. We disagree on both points.

■ First, we consider whether these reports were section 3500(e) (1) statements made by Ball. Although we entertain serious doubts whether Graves complied with the demand requirement of the Act to obtain production of the reports as (e) (1) statements, 18 U.S.C. § 3500(b), we nevertheless reach the merits of this contention. On direct examination Ball testified that he had made an investigation and obtained two checks, which he then produced in court. Even if we conclude that the interim reports were adopted by Ball as his own statements, thus bringing these reports within the (e) (1) definition with respect to Ball, subsection (e) (1) was nevertheless unavailable to Graves under the

circumstances of this case. Subsection (b) requires, in order to compel production of an (e) (1) statement, that the statement "relate to the subject matter as to which the witness has testified." Here, the limited point to which Ball testified was that he had investigated this case and obtained checks. We do not find that the interim reports he prepared are sufficiently connected with the subject matter of his direct testimony to require their production as (e) (1) statements under the Jencks Act. *See* Williamson v. United States, 5 Cir., 1966, 365 F.2d 12, 15; United States v. Dickerson, 2 Cir., 1965, 347 F.2d 783. In any event, nonproduction of these reports as (e) (1) statements of Ball was harmless error not justifying a new trial. *See, e. g.,* Rosenberg v. United States, 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959). *See also* 2 Wright, Federal Practice and Procedure § 417, at 213–214 (1969).

██ We next consider whether the interim reports were (e) (2) statements under the Jencks Act. Read together, subsections (b) and (e) (2) require production on demand of statements that are "substantially verbatim" recitals of oral statements the prosecution witness has made to a Government agent, provided the recitals were written "contemporaneously" with the making of the oral statements. Graves and the Government here join issue on whether the interim reports are "substantially verbatim" recitals of the oral statements made to Ball. As we read the record, the District Court determined that the reports were not "substantially verbatim" recitals. This was a determination of fact, and we are not free to set it aside unless it was clearly erroneous. Campbell v. United States, 373 U.S. 487, 493, 83 S.Ct. 1356, 1360–1361, 10 L.Ed.2d 501 (1963). *See also* O'Brien v. United States, 5 Cir., 1969, 411 F.2d 522, 523–524. Having carefully reviewed the record, we conclude that the District Court's determination was correct. *See e. g.,* Palermo v. United States, 360 U.S. 343,

352–353, 79 S.Ct. 1217, 1224–1225, 3 L.Ed.2d 1287 (1959).

██ Defendant's final two Jencks Act contentions are without merit. He first contends that the District Court erred when it failed to conduct a voir dire examination immediately after production of the reports was requested. Since Graves did not object in the trial court to the delay of the examination, he is limited on appeal to the argument that the procedure followed by the District Judge was "plain error." Fed.R.Crim.P. 52(b). The circumstances under which the voir dire was ultimately conducted show that Graves was not the victim of plain error and that the delay did not adversely affect his exercise of the right to cross-examine the prosecution witnesses. Graves next contends that the District Court erred when it failed to conduct an inspection in camera of the reports when the issue of producibility was finally reached. Had the Government's position been that certain matter in the reports was not subject to production, rather than that the reports in their entirety were not Jencks Act statements, Graves might have cause to complain. 18 U.S.C. § 3500(c). Here, however, the District Court determined after the voir dire examination that the reports in their entirety were not Jencks Act statements. An inspection in camera was not thereafter required.

## II.

██ The indictment against Graves charged that he had committed crimes in Orange County, Florida (the Middle District of Florida). Graves urges that a judgment of acquittal should have been granted because the Government failed to prove that the alleged crimes occurred in the Middle District of Florida. The check involved in count one of the indictment was cashed at a Jordan Marsh store in "Orlando," while the check involved in count two was cashed at a W. T. Grant store in "Winter Park." Graves points out that communities named "Orlando" are to be found in Arkansas, Kentucky, New York, North

Carolina, Oklahoma, and West Virginia, as well as in Florida, and that "Winter Park" is the appellation of towns in Colorado, Florida, and North Carolina. From this Graves argues that the Government failed to prove that "Orlando" and "Winter Park" are located in the Middle District of Florida. We disagree. The absence of direct proof of venue will not defeat conviction when inferences of venue may properly be drawn from circumstantial evidence. If, on the evidence considered as a whole, it may be inferred that the crime was committed where the venue was laid, that is sufficient. Weaver v. United States, 5 Cir., 1962, 298 F.2d 496, 498. On the record in this case, there is ample proof that the forged checks were cashed in the Middle District of Florida.

Viewing the record as a whole and in the light most favorable to the Government, we conclude that the evidence was sufficient to warrant a conviction in this case. Therefore, a judgment of acquittal would not have been justified.

Affirmed.