UNITED STATES of America,
Plaintiff-Appellee,

v.

Theodore Roosevelt HARRIS et al.,
Defendants-Appellants.

No. 71-1713
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Feb. 24, 1972.

Rehearing Denied March 15, 1972.

Rehearing and Rehearing En Banc
Denied May 11, 1972.

* [1] Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, 5 Cir. 1970, 431 F.2d 409, Part I.

Robert D. Hart, Jr., Pensacola, Fla., court appointed for Scott.

Owen Ed Adams, Pensacola, Fla., court appointed for Barfield.

William G. Davis, Jr., Pensacola, Fla., court appointed for Chapman.

William H. Stafford, Jr., U. S. Atty., Pensacola, Fla., for plaintiff-appellee.

Emory O. Williams, Jr., Pensacola, Fla., court appointed for Chapman.

Henry R. Barksdale, Pensacola, Fla., for Harris.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GOLDBERG, Circuit Judge:

Appellants, Theodore R. Harris, Bobby G. Barfield, Don G. Chapman, and Richard L. Scott, appeal jury convictions of the federal crimes of conspiracy and burglary, alleging that the trial judge committed reversible error in denying their motions to sever the consolidated trial, in refusing to sequester the jury, in failing to compel the government to disclose prior to trial a statement by an alleged co-conspirator who had "turned state's evidence," in failing to require a preliminary hearing for the purpose of having a government witness identify the defendants prior to trial, and in refusing to grant appellants' motions for judgment of acquittal on the ground that the evidence was insufficient to support a verdict of guilty. In addition, appellant Harris asserts that the trial judge erred when he did not specifically instruct the jury regarding the credibility and weight to be given to alibi testimony submitted in behalf of Harris; and appellant Chapman appeals the trial judge's refusal to disqualify himself because of alleged prejudice against Chapman and because of the judge's admitted ownership of stock related to the burglarized bank. We find all allegations of error without merit, and we affirm the convictions.

 Defendants may be joined in indictment and in trial if "they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses," F.R.Crim.Pro. 8 (b) and 13, unless "it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants . . . for trial together," F.R.Crim.Pro. 14. All appellants in this case were alleged to have conspired to commit and to have committed precisely the same crime, allegations clearly within the ambit of 8(b). Once the conditions of Rule 8(b) are satisfied, it is then "within the sound discretion of the

trial judge as to whether the defendants should be tried together or severally." Opper v. United States, 1954, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101. *See also* Peterson v. United States, 5 Cir. 1965, 344 F.2d 419; West v. United States, 5 Cir. 1962, 311 F.2d 69; Davis v. United States, 5 Cir. 1945, 148 F.2d 203, cert. denied, 1945, 325 U.S. 888, 65 S.Ct. 1570, 89 L.Ed. 2001. In weighing the competing factors under Rule 14 regarding severance, the trial court must evaluate the alleged factual and legal compactness of the consolidated trial and the government's interest in judicial economy with the potential prejudice to any of the defendants. *See* Flores v. United States, 5 Cir. 1967, 379 F.2d 905. If, as a practical matter, the natures of the offenses or of the evidence are of such a character or are so complicated that a jury could not reasonably be expected to separate the indictments or the defendants and to evaluate the evidence properly and individually against each separate defendant on each separate charge, then the trial judge should sever the trials. *Cf.* Jackson v. Denno, 1964, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. The trial judge in the instant case concluded that there would be no prejudice to the individual defendants resulting from consolidation, and we do not find he has abused his discretion by so concluding. This is not a case of one co-defendant confessing and implicating a fellow co-defendant by his confession, which might make it insurmountably difficult for a jury to render its decision regarding one co-defendant on the basis of his confession and yet to ignore that confession altogether when deliberating the fate of the second co-defendant. *See* Flores v. United States, *supra;* Schaeffer v. United States, 5 Cir. 1955, 221 F.2d 17; Barton v. United States, 5 Cir. 1959, 263 F.2d 894; Belvin v. United States, 5 Cir. 1960, 273 F.2d 583, cert. denied, 1963, 372 U.S. 922, 83 S.Ct. 737, 9 L.Ed.2d 726; Wright, Proposed Changes in Federal Civil, Criminal, and Appellate Procedure, 35 F.R.D. 317 (1964). Rather, one of the alleged conspirators in the burglary, John L. Johnson, turned state's evidence prior to trial and took the stand to testify against all of the defendants. Although Johnson was indicted with the appellants, Johnson himself was not on trial at the time as a co-defendant. In addition, he was subject to extensive cross-examination by all appellants. *See* Flores v. United States, *supra;* Barton v. United States, *supra;* Belvin v. United States, *supra.* And finally, the fact that the government would produce Johnson as a witness against his alleged co-conspirators was no surprise to the appellants. *See* Belvin v. United States, *supra;* Flores v. United States, *supra.* In attempting to demonstrate that they were prejudiced under Rule 14 by the trial judge's failure to sever, appellants jointly submit only that their physical proximity in court substantially prejudiced them with regard to the conspiracy count. However, a conspiracy such as that alleged here is appropriate for consolidation under the guidelines of the Federal Rules, F.R.Crim.Pro. 8(b), 13. To demonstrate prejudice under Rule 14 appellants must demonstrate something more than the simple fact that they sat together at a joint trial for conspiracy. Appellant Harris also asserts that the jury was unable to maintain any meaningful distinctions between the defendants during the consolidated trial. Again, we must disagree. The trial judge's instructions to consider each defendant and the evidence against him separately were clear and explicit, and we see nothing so insurmountably confusing in this set of facts and defendants that a jury would simply be incapable of following instructions and of making proper distinctions and findings regarding each individual defendant. *See* Delli Paoli v. United States, 1957, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278.

"To say that the jury might have been confused amounts to nothing more than an unfounded speculation that the jurors disregarded clear instructions of the court in arriving at their verdict. Our theory of trial relies upon

the ability of a jury to follow instructions. There is nothing in this record to call for reversal because of any confusion or injustice arising from the joint trial."

*Opper v. United States,* 348 U.S. at 95, 75 S.Ct. at 165. Appellants Barfield, Chapman, and Scott also assert that the trial judge was in error when he permitted joinder of the substantive burglary charge and the conspiracy charge. But the alleged burglary and the alleged conspiracy were "of the same or similar character or [were] based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan," also within the discretionary perimeters of the Federal Rules, F.R. Crim.Pro. 8(a). Appellants were tried for jointly conspiring to burglarize and for jointly and severally committing the substantive burglary planned during the conspiracy; absent other showings of prejudice we find nothing inappropriate in consolidation under these circumstances. We conclude that sufficient prejudice to any of the defendants has not been established, and severance of the individual defendants was not required.

 Appellants next contend that the trial court erred in refusing defendants' request to sequester the jury overnight, even though the trial judge did instruct the jurors that they were not to discuss the case or to listen to any media discussion of it. In so contending, appellants rely heavily on two Seventh Circuit cases, *United States v. D'Antonio,* 7 Cir. 1965, 342 F.2d 667, and *United States v. Panczko,* 7 Cir. 1965, 353 F.2d 676, cert. denied, 383 U.S. 935, 86 S.Ct. 1066, 15 L.Ed.2d 853. We note that *D'Antonio* and *Panczko* appear to impose more stringent restrictions on the discretion of a trial judge to decline to

sequester the jury than does this court. *See* Tyler v. United States, 5 Cir. 1968, 397 F.2d 565, cert. denied, 394 U.S. 917, 89 S.Ct. 1187, 22 L.Ed.2d 450; Grant v. United States, 5 Cir. 1966, 368 F.2d 658; Estes v. United States, 5 Cir. 1964, 335 F.2d 609, cert. denied, 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559; *accord,* Cardarella v. United States, 8 Cir. 1967, 375 F.2d 222, cert. denied, 389 U.S. 882, 88 S.Ct. 129, 19 L.Ed.2d 176; Hines v. United States, 10 Cir. 1966, 365 F.2d 649; United States v. Breland, 2 Cir. 1967, 376 F.2d 721; *see generally,* Holt v. United States, 1910, 218 U.S. 245, 31 S. Ct. 2, 54 L.Ed. 1021. It also appears that in our previous cases there had been no prior objection by defendant to the separation of the jury after it had begun its deliberations, but we see no reason to adopt the Seventh Circuit rule that a defendant has the absolute right to demand that the jury be sequestered overnight. We note that in both *D'Antonio* and *Panczko* there were additional reasons for the court to conclude that the defendants had been prejudiced by the separation of the jury, quite independent of the separation standing alone.[1] We find no satisfactory rationale by which to hold that a refusal to sequester a jury is per se error when the defendant requests the sequester. The purpose of sequestering is, the cases agree, to protect the jury from interference. While the historical bases of that fear are no longer with us, *see* 2 Pollock & Maitland, The History of English Law 616–632, the fear of interference can, in some instances, be a very real one. However, whether or not the defendant objects to jury separation appears to us to be irrelevant to the purpose of sequestering. If the trial judge has his usual discretionary authority to separate the jurors in the absence of an objection or a re-

---

1. In *Panczko* the appellate court was careful to describe the particular physical discomfiture of a Chicago jury at a late separation and early re-convening, directly relating juror discomfiture to the fairness of the defendant's trial. The Seventh Circuit in *D'Antonio* was clearly disturbed that a trial judge had left only his marshal to instruct the jury as to their responsibilities not to discuss the case upon separation and that the trial judge had treated the whole separation question entirely too cavalierly. *See* United States v. D'Antonio, 342 F.2d at 671 (Swygert, J., dissenting).

quest by the defendant, then we fail to see how an objection or a request can remove his discretion altogether. Put another way, if the right to a sequestered jury is not so "fundamental" to the fairness of a trial that the failure to sequester would constitute "plain error," F.R.Crim.Pro. 52(b), or a denial of Due Process, then we fail to see that a sequestered jury is so "fundamental" that it becomes an inalienable right for a defendant upon request, to the utter exclusion of the trial judge's usual discretion in very similar matters regarding the administration of a trial. In addition, we find the general allegation that jurors will be unable to take seriously and abidingly a trial judge's clear instructions to be contrary to our general reliance on the integrity of the jury, absent some special showing that the jury will not be able to perform as expected. *Cf.* Opper v. United States, *supra;* Delli Paoli v. United States, *supra.* A defendant may be able to demonstrate to the trial judge that there would be a substantial likelihood of prejudice if the jurors were allowed to separate. If the defendant's demonstration were compelling enough, it is likely that a judge would abuse his discretion if he refused to honor a request to sequester the jury. But it appears to this court that the critical question is whether or not there is or could be prejudice to the defendant, not whether or not the defendant has made a formal request. *See* Tyler v. United States, *supra;* Breland v. United States, *supra.* Therefore, in order to come within the purposive ambit of any theory of sequestering, one who wishes to challenge a judge's allowance of juror separation must demonstrate a substantial likelihood that some prejudice did result from the refusal to sequester; the mere *fact of separation* over defendant's objections will not alone establish a claim to a reversal on the basis of abuse of discretion. In our case appellants did not even *allege* on

appeal, let alone demonstrate, that a substantial likelihood of prejudice to the fairness of their trials resulted from the separation of the jurors. The fact that there was a prior formal objection to separation on the ground that there *might* be prejudice from the media if the jury were not sequestered does not suffice to establish before this court that the trial judge abused his discretion by allowing juror separation. *See* Marshall v. United States, 1959, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250; Grant v. United States, *supra.*

In their third allegation of error appellants contend that the government failed to disclose the statement of one witness, in violation of Brady v. Maryland, 1963, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 and Williams v. Dutton, 5 Cir. 1968, 400 F.2d 797, cert. denied, 393 U.S. 1105, 89 S.Ct. 908, 21 L.Ed.2d 799. Under *Brady* the government may not suppress evidence favorable to the accused, and under *Dutton* the government has an "affirmative duty . . . to produce at the appropriate time requested evidence which is materially favorable to the accused either as direct or impeaching evidence." 400 F.2d at 800. The statement which was not submitted to appellants prior to trial was that of John L. Johnson, the conspirator-turned-accuser. Appellants contend that this failure to disclose prejudiced them in two instances: first, simply in that they did not know prior to trial the specific substance of Johnson's testimony; second, in that there was a conflict between Johnson's testimony and that of another government witness regarding the specific whereabouts of appellant Barfield during the alleged burglary, which could be related to Johnson's credibility.[2] We conclude that the government was under no obligation under *Brady* or *Dutton* to disclose the Johnson statement prior to trial. Johnson's statement falls squarely within the Jencks Act, which requires that the gov-

---

2. Johnson testified that Barfield remained in the automobile during the burglary, while the second witness testified that a man she identified as Barfield was actively involved in exiting the burglarized bank.

ernment produce any statement taken pursuant to the Act, but only *after* the government's witness has testified on direct examination.[3] The defense is not automatically entitled under a *Brady* theory to disclosure of a Jencks Act statement prior to the direct testimony of the government's witness. *See* United States v. Graves, 5 Cir. 1970, 428 F.2d 196, cert. denied, 400 U.S. 960, 91 S.Ct. 360, 27 L.Ed.2d 269; United States v. Montos, 5 Cir. 1970, 421 F.2d 215, cert. denied, 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532; *cf.* Palermo v. United States, 1959, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287. "The [Jencks] Act does not authorize fishing expeditions by the

defendant," United States v. Graves, 428 F.2d at 199, and Due Process "does not require premature production at pre-trial hearings . . . of statements ultimately subject to discovery under the Jencks Act," United States v. Montos, 421 F.2d at 221. In *Montos* this court sanctioned the government's failure to produce a statement at a pre-trial hearing on a motion to suppress. If the *Brady* rationale per se does not automatically override the Jencks Act procedures on as constitutionally significant a matter as the suppression of evidence, we fail to see how *Brady's* Due Process theory could automatically override the Jencks Act procedures when the matter

---

3. 18 U.S.C.A. § 3500

 (a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) to an agent of the Government shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

 (b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

 (c) If the United States claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the United States to deliver such statement for the inspection of the court in camera. Upon such delivery the court shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness. With such material excised, the court shall then direct delivery of such statement to the defendant for his use. If, pursuant to such procedure, any portion of such statement is withheld from the defendant and the defendant objects to such

withholding, and the trial is continued to an adjudication of the guilt of the defendant, the entire text of such statement shall be preserved by the United States and, in the event the *defendant* appeals, shall be made available to the appellate court for the purpose of determining the correctness of the ruling of the trial judge. Whenever any statement is delivered to a defendant pursuant to this section, the court in its discretion, upon application of said defendant, may recess proceedings in the trial for such time as it may determine to be reasonably required for the examination of such statement by said defendant and his preparation for its use in the trial.

 (d) If the United States elects not to comply with an order of the court under paragraph (b) or (c) hereof to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.

 (e) The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

 (1) a written statement made by said witness and *signed* or *otherwise adopted* or approved by him; or

 (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement.

at issue is merely one alleged discrepancy between Johnson's rather fulsome Jencks Act disclosure and one statement by another government witness. Jencks Act disclosures may be used by the defense only for the purpose of impeachment in any case, *see* United States v. Graves, *supra,* and pre-trial preparation regarding one alleged discrepancy between two government witnesses as to precisely *where* appellant Barfield was during the burglary does not seem to be of substantial Due Process character, assuming that *Brady* and the Jencks Act might in some circumstances be in substantive conflict on the general issue of the production of government evidence. *See* Government of the Virgin Islands v. Lovell, 3 Cir. 1969, 410 F.2d 307 (Freedman, J., dissenting), cert. denied, 396 U.S. 964, 90 S.Ct. 440, 24 L.Ed.2d 428; *see also* United States v. Polisi, 2 Cir. 1969, 416 F.2d 573, where the Second Circuit, on a motion for a new trial on the basis of newly discovered evidence, concluded that there had been substantial prejudice to the defendant when the government failed to disclose at any point during the trial *significant* discrepancies within the testimony of the *same* witnesses at two different trials. In the instant case two government witnesses were certain that Barfield was actively participating at the scene of the burglary, even if they placed him in different locations. And all of the appellants' counsel, including that of Barfield, had adequate time during the trial to bring out and to emphasize to the jury for purposes of impeachment any alleged discrepancy in the testimony of the two government witnesses regarding the whereabouts of appellant Barfield. We cannot conclude from the record that appellants' opportunity to impeach Johnson was substantially prejudiced under *Brady* or *Dutton* by the government's failure to produce Johnson's statement and its alleged discrepancy prior to trial. *See* United States v. Tomaiolo, 2 Cir. 1967, 378 F.2d 26, cert. denied, 389 U.S. 886, 88 S.Ct. 159, 19 L.Ed.2d 184. Also under *Dutton* appellants assert that the trial court granted too much discretion to the prosecutor concerning disclosure,[4] and that the trial judge should have reviewed the Johnson statement in camera to ascertain thoroughly any alleged Due Process problems in the government's failure to disclose. While we may agree with appellants that the in camera reviewing procedure suggested in *Dutton* might have been appropriate, we fail to see any material prejudice to any of the appellants in the trial judge's failure to do so. The *Dutton* in camera procedure is a suggestion, not a constitutional procedural mandate that the trial judge rummage through all government evidence prior to trial. The trial court's arguable over-dependence on the "benevolence of the prosecutor," Williams v. Dutton, 400 F.2d at 800, for disclosure of evidence material to the defense cannot operate ipso facto as a denial of *Brady* Due Process. An aggrieved appellant must show some material prejudice resulting from the trial judge's failure to review in camera, and appellant Barfield simply has not done so.

We find no merit whatsoever to appellants' fourth contention, that they were denied their Sixth Amendment right to confront witnesses against them. Each of the appellants confronted and cross-examined witness Johnson, the alleged co-conspirator, during the trial. There is no Sixth Amendment requirement that they also be allowed to confront Johnson at a preliminary hearing prior to trial. The indictment returned

4. The trial court's order regarding disclosure reads as follows:

"In view of the assurances of the United States Attorney that the Government has no knowledge of evidence favorable to any of Defendants and, that if it acquired such knowledge, it would immediately transmit such information to Defendants or their counsel, all motions to compel evidence favorable to Defendants are hereby DENIED without prejudice. Such motions may be renewed at the close of the Government's case or prior thereto, if basis for production for in camera inspection is demonstrated."

by a grand jury is sufficient to establish probable cause for trial, and further preliminary hearing for the purpose of direct pre-trial identification of any defendant is not constitutionally mandated. *See* Swingle v. United States, 10 Cir. 1968, 389 F.2d 220, cert. denied, 392 U.S. 928, 88 S.Ct. 2285, 20 L.Ed.2d 1386.

Similarly, appellants' fifth contention, that the trial judge erred in not granting their motions for judgment of acquittal on the ground that the evidence was insufficient to support a verdict of guilty, is without merit. The testimony of Johnson is cogent and material. In addition, there was corroborating testimony from several other government witnesses linking the appellants and individually incriminating most of the appellants. Altogether, the evidence is sufficient to support a jury verdict of guilty. Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Gordon v. United States, 5 Cir. 1971, 438 F.2d 858.

Appellant Chapman's claim that the trial judge should have disqualified himself as to Chapman is almost frivolous. The fact that the trial judge owned a small amount of stock in the holding company which had some control over the group of banks of which the burglarized bank was a member, a fact which the trial judge disclosed at the trial, does not, in our opinion, render him personally biased, *see* 28 U.S.C.A. § 144. *See also* United States v. Ravich, 2 Cir. 1970, 421 F.2d 1196, cert. denied, 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66. Likewise, the mere fact that the trial judge had ruled against appellant Chapman in an earlier appearance before his court does not ipso facto render the trial judge biased. Our judicial system does not provide for no-deposit/no-return judges, disposable after one use. An accused cannot be allowed to find himself immune from the law simply because he has run through every judge within his venue, and "used" judges must simply be recycled. Without a much more substantial showing of some personal bias against appellant Chapman, we find nothing whatsoever in the record or in the

trial judge's able handling of the case to add any substance to what is at best a very flimsy assertion of bias.

Finally, appellant Harris' assertion that the trial judge committed error when he failed to instruct the jury specifically regarding the credibility and weight of the alibi testimony that was given in his behalf is not valid. Harris did not object at the time to the judge's failure to give the allegedly-required instruction, nor did he even request an instruction regarding alibi. In the absence of either an objection or a request, we find it rather difficult to afford any merit at all on appellate review of Harris' claim. F.R.Crim.Pro. 30; *see* Singer v. United States, 1965, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630; Fahning v. United States, 5 Cir. 1962, 299 F.2d 579. Even if the alibi charge is so fundamental to the fairness of a trial that omission of such charge might in some instances constitute "plain error," F.R. Crim.Pro. 52(b), or a denial of Due Process, we find that the entirety of the trial judge's instructions adequately protected appellant Harris. *See* Escandar v. United States, 5 Cir. 1961, 295 F.2d 58; Gurleski v. United States, 5 Cir. 1968, 405 F.2d 253, cert. denied, 395 U.S. 981, 89 S.Ct. 2140, 23 L.Ed.2d 769. The trial judge continually emphasized that each defendant had to be considered separately, based only on the evidence relating to him as an individual. There is nothing in the course of the trial or in the whole of the trial judge's instructions that would lead us to believe that the omission of a specific alibi charge with regard to Harris constituted reversible error under these circumstances. Therefore, the judgment as to appellant Harris, and the judgments as to appellants Barfield, Chapman, and Scott, are affirmed.

Affirmed.

ON PETITION FOR REHEARING

PER CURIAM:

IT IS ORDERED that the petition for rehearing filed on behalf of Scott, Bar-

field and Chapman in the above entitled and numbered cause be, and the same is hereby DENIED.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

### PER CURIAM:

The Petition for Rehearing filed on behalf of Theodore Roosevelt Harris is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

In his petition for rehearing en banc appellant Harris asserts for the first time that he was entitled to but did not receive a disclosure of the statement of John L. Johnson *during* the trial. Harris' only request for Johnson's statement came in a pre-trial motion for discovery, advanced on a *Brady* theory although tracking the language of the Jencks Act. At no point during the course of the trial did Harris request disclosure of the Johnson statement, although Johnson testified at considerable length on direct and cross-examination.

 Harris originally appealed only the denial of his pretrial motion, and this panel affirmed that denial following a discussion of *Brady* and the Jencks Act as they relate to pre-trial discovery. In his petition for rehearing en banc, Harris now asserts that he was entitled to the Johnson statement during the trial entirely on the strength of his pre-trial discovery motion. We cannot agree with that theory of trial manage-

ment. Under the Federal Rules of Criminal Procedure, a Jencks Act request is wholly inappropriate in a pretrial motion for discovery. F.R.Crim.Pro. 16(b).[1] Since Harris is entitled to a Jencks Act statement only after the witness testifies on direct, 18 U.S.C.A. § 3500, we conclude that Harris was under obligation to request production of the statement within a reasonable time proximate to the direct testimony so as to alert the district judge and the government of the nature of his request. Preferably, that request should be made immediately before, during, or immediately after the direct examination, although circumstances might permit requests at different points during the trial. In this case, Harris made a pre-trial motion for discovery that was part *Brady,* part Jencks, and the district judge properly denied that pre-trial motion. Throughout the trial Harris was well aware of the existence of Johnson's written statement and of his Jencks Act prerogative, yet he chose to remain silent. At the very least, Harris was under obligation to alert the trial judge to his Jencks Act request during the course of the trial and not simply by means of some multi-pronged pre-trial motion most appropriately termed "fishing." *See* F.R.Crim.Pro. 16(b). As appellate weighers of the fairness of a trial we cannot award prizes to alleged errors dredged up by such a dragnet pre-trial discovery motion. The orderly administration of a trial, to which the Jencks Act and the Federal Rules propose to give effect, requires no more, but no less, than a timely motion. *See* Hanger v. United States, 8 Cir. 1968, 398 F.2d 91; Lewis v. United States, 8 Cir. 1965, 340 F.2d 678; United States v. Keine, 10

---

1. "Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy or photograph books, papers, documents, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, upon a showing of materiality to the preparation of his defense and that the request is reasonable. Except as provided in subdivision (a) (2), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by government agents in connection with the investigation or prosecution of the case, or of statements made by government witnesses or prospective government witnesses (other than the defendant) to agents of the government except as provided in 18 U.S.C. § 3500." F.R.Crim.Pro. 16(b).

Cir. 1971, 436 F.2d 850; F.R.Crim.Pro. 16(b), 47.

The panel has also reconsidered Harris' objection to being placed on the summary calendar pursuant to Local Rule 18, and remains of the opinion that oral argument is not required in this case.

With these additional observations, the judgment below is affirmed.