FISH, District Judge,
concurring:
Because I believe there were no “discovery” violations in this case, I readily agree with the majority that the district court abused its discretion by imposing the sanction of excluding twenty-five witnesses for the government. I am troubled, however, by the majority’s uncritical acceptance of the parties’ arguments that this is a “discovery” dispute to which the analysis of cases such as United States v. Sarcinelli, 667 F.2d 5 (5th Cir.1982), and United States v. Katz, 178 F.3d 368 (5th Cir.1999), may be applied. Those cases construct an analytical framework for the imposition of sanctions under Rule 16, F.R.Crim. P., which — by its terms at least — is not applicable in this situation.[1]
Rule 16 is entitled “Discovery and Inspection.” If that rule were applicable, *302 the pertinent part would be subsection (a), which is denominated “Governmental Disclosure of Evidence.” Subsection (a) in turn is divided into two parts: “(1) Information Subject to Disclosure” and “(2) Information Not Subject to Disclosure.” The information “subject to disclosure” in part (a)(1) falls into five categories: “(A) Statement of Defendant”; “(B) Defendant’s Prior Record”; “(C) Documents and Tangible Objects”; “(D) Reports of Examinations and Tests”; and “(E) Expert Witnesses.” All other documents in the possession of the government, by virtue of Rule 16(a)(2) (“Information Not Subject to Disclosure”), are — except as otherwise required by the Jencks Act, 18 U.S.C. § 3500 — non-discoverable.
The “target” letters here are not described by any of the categories in Rule 16(a)(1). The defendants, apparently cognizant of this fact, did not seek the letters under the aegis of Rule 16 but under the principles of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Brady and its progeny, however, arise not in the context of pretrial criminal discovery but in post-judgment collateral review of criminal convictions. See United States v. Agurs, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (“The rule of Brady v. Maryland ... arguably applies in three ... situations. Each involves the discovery, after trial of information which had been known to the prosecution but unknown to the defense.”) (emphasis added). The Brady line of cases announces no rule of discovery but the self-executing constitutional rule that due process requires disclosure by the prosecution of evidence favorable to the accused that is material to guilt or punishment.[2]
In a subsequent gloss on Brady, the .Supreme Court has noted that “[a]n interpretation of Brady to create a broad, constitutionally required right of discovery would entirely alter the character and balance of our present system of criminal justice.” United States v. Bagley, 473 U.S. 667, 675 n. 7, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (internal quotation marks and citation omitted). This Court too has recognized both that Brady “is not a pretrial remedy,” United States v. Scott, 524 F.2d 465, 467 (5th Cir.1975), and that Brady is not “applicable at pre-trial stages.” United States v. Frick, 490 F.2d 666, 671 (5th Cir.1973), cert. denied, 419 U.S. 831, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974). It has also stated that “Brady is not a discovery rule, but a rule of fairness and minimum prose-cutorial obligation.” United States v. Beasley, 576 F.2d 626, 630 (5th Cir.1978), cert. denied 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979).
Rule 16, of course, explicitly requires pretrial discovery and production of the material described in the rule, while Brady, because it is not a discovery rule, contains no such timing requirements. United States v. Harris, 458 F.2d 670 (5th Cir.), cert. denied 409 U.S. 888, 93 S.Ct. 195, 34 L.Ed.2d 145 (1972), highlights the importance of this distinction. There, the defendants contended that the prosecution violated Brady by not producing to them before trial the written statement of government witness John L. Johnson, who was, in the language of the opinion, a “conspirator-turned-accuser.” 458 F.2d at 675. The defendants claimed prejudice as a result of the non-production because they did not know the substance of Johnson’s testimony before trial and because there was a conflict between Johnson’s testimony and that of another government witness regarding the whereabouts of one of the defendants, thereby raising an issue of Johnson’s credibility. Id. This Court held, however, that there was no obligation *303 under Brady to produce the statement before trial, since the Jencks Act made it producible only after Johnson testified. Id. at 675-76. While the statement of the witness in Harris was surely as valuable to the defense for impeachment as the “target” letters at issue here, this Court found, as a matter of law, that no Brady violation had occurred.
The distinction between Rule 16 and Brady as the basis of disclosure is also significant because the question of whether Rule 16 has been violated can be determined before or during trial, and appropriate sanctions imposed in the manner prescribed by the rule. See Rule 16(d)(2), F.R.Crim. P. With the backward-looking focus of Brady, however, whether a Brady violation has occurred,[3] indeed whether the government even had a Brady obligation,[4] can only be determined after the trial is over.[5] This is true because disclosure under Brady is required only if the evidence *304 is material, but materiality can be judged only in hindsight, in the context of all the evidence presented. See Agurs, 427 U.S. at 112-13, 96 S.Ct. 2392 (evidence is material if its omission creates a reasonable doubt that, in light of the record as a whole, did not otherwise exist); Kyles v. Whitley, 514 U.S. 419, 433-37, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (evidence is material if its omission, when the entire record is considered, “undermines confidence in the outcome of the trial.”); Porretto v. Stalder, 834 F.2d 461, 464 (5th Cir.1987) (“Omitted evidence is deemed material when, viewed in the context of the entire record, it creates a reasonable doubt as to the defendant’s guilt that did not otherwise exist.”).
What we have in this case, therefore, is a sanction against the government for tardily producing certain “target” letters which, under Brady, the government may have had no obligation to produce at all. We simply cannot tell, without the benefit of a full trial record, whether the “target” letters were material within the meaning of Brady. See United States v. Kubiak, 704 F.2d 1545, 1550 (11th Cir.), cert. denied, 464 U.S. 852, 104 S.Ct. 163, 78 L.Ed.2d 149 (1983) {Brady not violated by untimely disclosure of co-conspirator statement, which was utilized at trial, because the focus of due process violation is “not upon the fact of nondisclosure, but upon the impact of nondisclosure on the jury’s verdict.”); United States v. Starusko, 729 F.2d 256, 262 (3rd Cir.1984) (since “[tjhere can be no violation of Brady unless the government’s non-disclosure infringes the defendant’s fair trial right,” precluding key government witness from testifying as sanction for non-disclosure of Brady material was abuse of discretion). Unless Brady mandated production of these letters, Rule 16(a)(2) made them non-producible; if the letters were non-producible, the government could hardly be sanctioned for doing what it was legally entitled to do, i.e., not producing them. Certainly, the government could not be sanctioned for simply producing the letters late, without any showing of prejudice to the defendants.
I would hold that Brady does not create a right to pretrial discovery in criminal cases and that the government violated no Brady obligation in this case. Because no sanction, in my opinion, was appropriate, I agree with the majority that the “draconian” sanction of excluding twenty-five government witnesses was an abuse of discretion.[6]

. Rule 16(d)(2) authorizes the imposition of sanctions for failure "to comply with this rule."

. See United States v. Washington, 669 F.Supp. 1447, 1451 (N.D.Ind.1987):
The constitution requires the prosecution to observe this right [i.e., the right under Brady to disclosure of exculpatory or mitigating evidence] with vigilance: a court order is unnecessary since the duty to protect the right already exists. An order to produce Brady materials makes as little sense as an order to preserve the accused's right to be free from unreasonable searches and seizures.

. See United States v. Starusko, 729 F.2d 256, 261 (3rd Cir.1984):
We recognize that, generally, it is difficult to analyze, prior to trial, whether potential impeachment evidence falls within Brady without knowing what role a certain witness will play in the government’s case.

. In its latest pronouncement on Brady, Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), the Supreme Court emphasized the discretion of the prosecutor, not the trial judge, in deciding what evidence is producible under Brady:
[T]he Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense. We have never held that the Constitution demands an open file policy ... and the rule in Bagley [United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), one of Brady’s progeny] ... requires less of the prosecution than the ABA Standards for Criminal Justice, which call generally for prosecutorial disclosures of any evidence tending to exculpate or mitigate.
While the definition of Bagley [and hence Brady ] materiality in terms of the cumulative effect of suppression must accordingly be seen as leaving the government with a degree of discretion, it must also be understood as imposing a corresponding burden. On the one side, showing that the prosecution knew of an item of favorable evidence unknown to the defense does not amount to a Brady violation, without more. But the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of "reasonable probability” [i.e., that disclosure of the evidence would produce a different outcome] is reached.
[E]ven if due process were thought to be violated by every failure to disclose an item of exculpatory or impeachment evidence ..., the prosecutor would still be forced to make judgment calls about what would count as favorable evidence, owing to the very fact that the character of a piece of evidence as favorable will often turn on the context of the existing or potential eviden-tiary record. Since the prosecutor would have to exercise some judgment even if the State were subject to this most stringent disclosure obligation, it is hard to find merit in the State’s complaint over the responsibility for judgment under the existing system, which does not tax the prosecutor with error for any failure to disclose, absent a further showing of materiality.
This means, naturally, that a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence. See Agurs, 427 U.S. at 108, 96 S.Ct. 2392 ("[T]he prudent prosecutor will resolve doubtful questions in favor of disclosure”).
Id. at 436-37, 439, 115 S.Ct. 1555 (emphasis added) (some citations omitted).
These passages clearly place responsibility on the prosecutor, rather than the trial judge, to determine not only whether a given piece of evidence should be produced but also when (i.e., "when the point of ‘reasonable probability’ [of a different outcome] is reached.”).

.One court has gone so far as to say that "[generally, a defendant must be tried and convicted before any due process violation [under Brady] becomes of consequence.” Commonwealth of Northern Mariana Islands v. Campbell, 1993 WL 614809 at *3 (N.Mariana Island July 22, 1993), aff’d, 42 F.3d 546 (9th Cir.1994). Other courts, while not going so far, say that the right to due process is not violated if the Brady material is disclosed in time for the defendant to use it effectively at trial, even if the material should have been disclosed earlier. United States v. O’Keefe, 128 F.3d 885, 898 (5th Cir.1997), cert. denied, 523 U.S. 1078, 118 S.Ct. 1525, 140 L.Ed.2d 676 (1998); United States v. Ellender, 947 F.2d 748, 757 (5th Cir.1991); United States v. *304 Campagnuolo, 592 F.2d 852, 860-61 (5th Cir.1979). See also United States v. Kubiak, 704 F.2d 1545, 1549-50 (11th Cir.) (in determining whether nondisclosure of exculpatory information constituted a denial of due process, "the focus is not upon the fact of nondisclosure, but upon the impact of the nondisclosure on the jury’s verdict."), cert. denied, 464 U.S. 852, 104 S.Ct. 163, 78 L.Ed.2d 149 (1983); United States v. Starusko, 729 F.2d 256, 262 (3rd Cir.1984) ("No denial of due process occurs if Brady material is disclosed in time for its effective use at trial.”) (quoting United States v. Higgs, 713 F.2d 39, 44 (3rd Cir.1983), cert. denied, 464 U.S. 1048, 104 S.Ct. 725, 79 L.Ed.2d 185 (1984)).

. Even if some sanction were appropriate, the exclusionary rule fashioned by the district court was, in my view, too harsh. As noted in the majority opinion, the district court found that the tardy production here was not the result of bad faith. The Supreme Court has discussed the costs and benefits of the exclusionary rule for Fourth Amendment violations in terms which appear to me to be equally applicable to this case:
Whether the exclusionary sanction is appropriately imposed in a particular case ... must be resolved by weighing the costs and benefits of preventing the use in the prosecution’s case in chief of inherently trustworthy ... evidence....
The substantial social costs exacted by the exclusionary rule ... have long been a source of concern. Our cases have consistently recognized that unbending application of the exclusionary sanction to enforce *305 ideals of governmental rectitude would impede unacceptably the truth-finding functions of judge and jury. An objectionable collateral consequence of this interference with the criminal justice system’s truth-finding function is that some guilty defendants may go free or receive reduced sentences as a result of favorable plea bargains. Particularly when law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system. Indiscriminate application of the exclusionary rule, therefore, may well generate] disrespect for the law and administration of justice.
United States v. Leon, 468 U.S. 897, 906-08, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (internal quotation marks and citations omitted).