**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Fred "Freddy Campo" CAMPAGNUOLO,
John "Jackie Campo" Campagnuolo, and
Michael "Mike Douglas" Gougules, Defendants-Appellees.**

No. 78–1352.

United States Court of Appeals,
Fifth Circuit.

April 6, 1979.

Jack V. Eskenazi, U. S. Atty., Miami, Fla., Atlee W. Wampler, III, Sp. Atty., U. S. Dept. of Justice, Miami, Fla., Marshall T. Golding, c/o T. George Gilinsky, Jerome M. Feit, Atty., Washington, D. C., for plaintiff-appellant.

James Jay Hogan, Joseph Mincberg, Miami, Fla. for Fred Campagnuolo.

Robert Foley, Philip G. Butler, Jr., West Palm Beach, Fla., for John Campagnuolo.

Randolph & Randolph, Robert J. Randolph, Stuart, Fla., for Michael Gougules.

Before WISDOM, GOLDBERG, and VANCE, Circuit Judges.

WISDOM, Circuit Judge:

In this criminal prosecution, the district judge suppressed certain evidence and then dismissed the indictment because he concluded that the government had violated the federal wiretap statutes, 18 U.S.C. §§ 2510–2520, and had failed to comply with a standing discovery order. We agree with the government that the district judge abused his discretion when he dismissed the indictment and when he suppressed some of the challenged evidence. Accordingly, we reverse and remand for trial.

## I.

## FACTS

Agents of the Federal Bureau of Investigation suspected that Fred Campagnuolo and some of his associates were conducting a gambling enterprise. On December 29, 1973, FBI agents secured a warrant to search Campagnuolo's apartment. The agents parked their vehicle on the street outside his apartment building. They observed that Campagnuolo was standing on the balcony of his apartment and appeared to be watching them. He reentered his apartment when the agents started their vehicle and circled the block. The agents then reparked their vehicle and went to the apartment. They knocked on the door, announced their identity, and said that they had a search warrant. After a delay of about 50 seconds, during which the agents repeated their announcement and threatened to knock the door down if it was not opened, Campagnuolo opened the door.

The agents entered the apartment and conducted a search. An agent noticed that one of the windows of the apartment was open and that the screen had been removed. He looked out the window and observed an envelope on the ground below. He retrieved the envelope and showed it to Campagnuolo, who denied any knowledge of it. The agents examined the envelope and found that it contained sheets of gambling information. The agents also discovered two telephones in Campagnuolo's apartment, both of which had been disconnected. An agent reconnected one of the telephones and, in a period of one hour and twenty minutes, received forty-two calls. Most of the callers either placed wagers or requested gambling information, which the agent attempted to provide. When asked about his identity, the agent gave the callers his true name; he did not inform them of his true occupation.

In 1975, a federal grand jury began investigating Campagnuolo and his associates. Carl Samuel "Kelley" Aurillio appeared be-

fore the grand jury under a grant of immunity. Aurillio testified that he and Campagnuolo had been partners in a bookmaking operation during the 1973 football season. Aurillio made other statements, however, that tended to exculpate Campagnuolo and some of his associates. Aurillio stated that the partners obtained their "line" for each game from newspapers rather than by interstate telephone calls. He further testified that John Campagnuolo, a defendant-appellee in this case, was merely a bettor and not a participant in the bookmaking operation. In addition, Aurillio testified that, to the best of his personal knowledge, Michael Gougules, also a defendant-appellee in this case, had not participated in the bookmaking operation.

In June 1975, the grand jury handed down a three-count indictment against Fred Campagnuolo, John Campagnuolo, and Gougules. Count I charged them with conspiracy to violate 18 U.S.C. § 1952 by using interstate telephone communications to carry on a gambling enterprise in violation of state law. Count II alleged that they violated § 1952 by using the interstate telephone facilities for gambling purposes. Count III charged them with using the interstate telephone facilities to transmit information assisting in the placing of wagers on sporting events in violation of 18 U.S.C. § 1084. In December 1975, the district court dismissed the indictment on the ground that the government had improperly disclosed wiretap evidence to the grand jury. This Court reversed and remanded. *United States v. Campagnuolo*, 5 Cir. 1977, 556 F.2d 1209.

In January 1978, on the day before trial was scheduled to begin, the government turned over to defense counsel certain evidentiary material: Fred Campagnuolo's statement denying knowledge of the gambling sheets contained in the envelope found outside his apartment during the 1973 search; a report of that search, including descriptions of the forty-two telephone calls received by the FBI agent who reconnected Campagnuolo's telephone; and a transcript of Aurillio's grand jury testimony.

The defense counsel moved to suppress Fred Campagnuolo's statement because, under the district court's standing discovery order entered in July 1975, the government should have given the statement to defense counsel long before the eve of the trial. The defense counsel also moved to suppress the telephone calls received by the FBI agent, arguing that the agent's conduct violated the federal wiretap statutes, 18 U.S.C. §§ 2510–2520, and that in any event the prosecutor violated his duty to turn over the information obtained by the reconnection of the telephone in accordance with the standing discovery order. Finally, counsel moved for the dismissal of the indictment because of the government's failure to give the defense counsel Fred Campagnuolo's statement, the evidence obtained by reconnection of the telephone, and Aurillio's grand jury testimony in accordance with the standing discovery order. The district judge granted both motions to suppress evidence and the motion to dismiss the indictment, rejecting the government's arguments that it had complied with the discovery order and that the FBI agent's conduct in reconnecting the telephone did not violate 18 U.S.C. §§ 2510–2520. The district judge clearly intended the dismissal to be with prejudice.

On appeal, the government argues that its conduct did not violate the discovery order and that the reconnection of the telephone did not violate the federal wiretap statutes. In addition, the government asserts that, even if it did violate the discovery order, the district judge abused his discretion when he dismissed the indictment.

## II.

### THE GOVERNMENT'S ALLEGED VIOLATIONS

The standing discovery order issued by the trial judge in pertinent part is set

forth in the margin.[1] This order is intended to promote the policies underlying the discovery provisions of Rule 16 of the Federal Rules of Criminal Procedure (*see* Appendix) and the Supreme Court's decision in *Brady v. Maryland*, 1963, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, which bars the prosecutor from suppressing requested evidence in the government's possession that may be exculpatory to the defendant.[2]

1. Good cause appearing, it is

ORDERED AND ADJUDGED that on or before July 10, 1975, the parties shall confer and the following shall be accomplished.

A. The government shall permit the defendant to inspect and copy the following items or copies thereof, or supply copies thereof which are within the possession, custody or control of the government, the existence of which is known or by the exercise of due diligence may become known to the government:

(1) Written or recorded statements made by the defendant.

(2) The substance of any oral statement made by the defendant before or after arrest in response to interrogation by a then known to be government agent which the government intends to offer in evidence at trial.

(3) Recorded grand jury testimony of the defendant relating to the offenses charged.

(4) Defendant's F.B.I. arrest record.

(5) Books, papers, documents, photographs, tangible objects, buildings or places which the government intends to use as evidence at trial to prove its case in chief, or were obtained from or belong to the defendant.

(6) Results or reports of physical or mental examinations, and of scientific tests or experiments, made in connection with this case.

(7) A written list of the names and addresses of all witnesses the government intends to call at trial to prove its case in chief together with an F.B.I. arrest record for any witness known by the attorney for the government to have a record of a prior felony conviction.

(8) Upon receipt of a notice of alibi defense . . . the government shall give the defendant written notice of the specific time, date and place at which the offense or any alleged conspiratorial overt act in which the defendant is named is alleged to have been committed. Thereafter, upon receipt of the witness list . . . the government shall give the defendant a written list of the names and addresses of the government witnesses who will establish the defendant's presence at the scene of the alleged offense or conspiratorial overt acts in which the defendant is named.

. . . . .

C. The government shall reveal to the defendant and permit inspection and copying of all information and material known to the government which may be favorable to defendant on the issues of guilt or punishment within the scope of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

D. The parties shall make every possible effort in good faith to stipulate to all facts or points of law the truth and existence of which is not contested and the early resolution of which will expedite the trial.

E. The parties shall collaborate in preparation of a written statement to be signed by counsel for each side, generally describing all discovery material exchanged, and setting forth all stipulations entered into at the conference. No stipulations made by defense counsel at the conference shall be used against the defendant unless the stipulations are reduced to writing and signed by the defendant and his counsel. This statement, including any stipulations signed by the defendant and his counsel, shall be filed with the Court within five days following the conference.

It shall be the continuing duty of counsel for both sides to immediately reveal to opposing counsel all newly discovered information or other material within the scope of this Standing Order.

Upon a sufficient showing the Court may at any time upon motion properly filed, order that the discovery or inspection provided for by this Standing Order be denied, restricted or deferred, or make such other order as is appropriate. It is expected by the Court, however, that counsel for both sides shall make every good faith effort to comply with the letter and spirit of this Standing Order.

All motions concerning matters not covered by this Standing Order must be filed pursuant to Local Rule 10G within 10 days from this date.

DONE AND ORDERED at Miami, Florida, this 3rd day of July, 1975.

PETER R. PALERMO
UNITED STATES MAGISTRATE

2. The government argues that it was not required to follow certain provisions of Paragraph C of the standing discovery order because those provisions were broader in scope than the requirements adopted by the Supreme Court in *Brady*. This argument is without merit. It is within the sound discretion of the district judge to make any discovery order that is not barred by higher authority.

## A. Fred Campagnuolo's Statement

■ Before the district judge, the government admitted that it had violated the standing discovery order when it failed to inform defense counsel of Fred Campagnuolo's statement denying knowledge of the envelope containing gambling slips. Furthermore, the government failed to argue that the discovery order did not encompass that statement. We reject the government's suggestion that this Court ignore these concessions. We are left, then, with the government's argument that the district judge should not have suppressed Fred Campagnuolo's statement because the government's noncompliance with the discovery order could not have prejudiced the appellees. This argument misconceives the district judge's broad discretion to administer sanctions for the violation of a valid discovery order. *See United States v. Bockius*, 5 Cir. 1977, 564 F.2d 1193, 1196; *United States v. Valdes*, 5 Cir. 1977, 545 F.2d 957, 961. We find no abuse of discretion where, as here, a district judge for prophylactic purposes suppresses evidence that, under a valid discovery order, the government should have disclosed earlier, even if the nondisclosure did not prejudice the defendants.

## B. Aurillio's Grand Jury Testimony

■ The government asserts that the district judge erred when he found that the government violated a duty to make pretrial disclosure to the defendants of Aurillio's grand jury testimony. The government first contends that such pretrial disclosure is barred by the Jencks Act, 18 U.S.C. § 3500. The government next argues that the Supreme Court's interpretation of the due process clause in *Brady v. Maryland*, 1963, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, does not require such pretrial disclosure in this case. Therefore, concludes the government, the standing discovery order was invalid to the extent that it allowed discovery beyond the limitations of the Jencks Act. We agree with the government's contentions.

The Jencks Act provides:

(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

• • • • •

(e) The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

• • • • •

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500. The prosecutor's colloquy with the district judge clearly indicated that Aurillio was a prospective government witness, and the appellees make no argument to the contrary. The Jencks Act, therefore, would require the prosecutor to allow the defendants' counsel to examine Aurillio's grand jury testimony only after Aurillio had given his direct testimony at the trial.[3]

---

**3.** The Act does not prohibit the prosecutor from disclosing Jencks Act material before trial, however. *E. g., United States v. Murphy*, 3 Cir. 1978, 569 F.2d 771, 774 n. 10, *cert. denied,*

In *Brady v. Maryland*, the Supreme Court held that due process forbids a prosecutor to suppress "evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution". 373 U.S. at 87, 83 S.Ct. at 1196–7. As this Court has recently stated, "*Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation". *United States v. Beasley,* 5 Cir. 1978, 576 F.2d 626, 630 (citing *United States v. Agurs,* 1976, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399–2400, 49 L.Ed.2d 342, 352).

This Court has interpreted *Brady* to require the government "to produce *at the appropriate time* requested evidence which is materially favorable to the accused either as direct or impeaching evidence". *Williams v. Dutton,* 5 Cir. 1968, 400 F.2d 797, 800, *cert. denied,* 393 U.S. 1105, 89 S.Ct. 908, 21 L.Ed.2d 799 (emphasis added). Courts have suggested that in some circumstances the "appropriate time" for discovery is prior to trial:

> It should be obvious to anyone involved with criminal trials that exculpatory information may come too late if it is only given at trial, and that the effective implementation of *Brady v. Maryland* must therefore require earlier production in at least some situations.

*United States v. Deutsch,* 1974, S.D.N.Y., 373 F.Supp. 289, 290. *See, e. g., United States v. Pollack,* 1976, 175 U.S.App.D.C.

227, 534 F.2d 964, 973–74, *cert. denied,* 429 U.S. 924, 97 S.Ct. 324, 50 L.Ed.2d 292; *United States v. Houston,* 1972, N.D.Ga., 339 F.Supp. 762, 764; Note, *The Prosecutor's Constitutional Duty to Reveal Evidence to the Defendant,* 74 Yale L.J. 136, 145 (1964). On the other hand, other courts have maintained that "*Brady* was never intended to create pretrial remedies". *United States v. Moore,* 6 Cir. 1971, 439 F.2d 1107, 1108 (per curiam).[4]

Aurillio's grand jury testimony contained exculpatory statements. That testimony falls within the ambit of *Brady. United States v. Herberman,* 5 Cir. 1978, 583 F.2d 222, 227–29.[5] This Court is aware that, as an abstract matter, *Brady* might appear to modify the statutory standards applicable to the disclosure of grand jury testimony. Notwithstanding the Jencks Act, *Brady* might mandate that the prosecutor should have disclosed to the appellees Aurillio's grand jury testimony at some time prior to trial.

On several occasions, this Court has addressed this question of possible conflict between the Jencks Act and *Brady. See United States v. Anderson,* 5 Cir. 1978, 574 F.2d 1347; *United States v. Dotson,* 5 Cir. 1977, 546 F.2d 1151; *United States v. Scott,* 5 Cir. 1975, 524 F.2d 465; *United States v. Wertis,* 5 Cir. 1974, 505 F.2d 683, *cert. denied,* 422 U.S. 1045, 95 S.Ct. 2662, 45 L.Ed.2d 697; *United States v. Frick,* 5 Cir. 1973, 490 F.2d 666, *cert. denied,* 419 U.S.

435 U.S. 955, 98 S.Ct. 1588, 55 L.Ed.2d 807. In *Murphy,* the Court of Appeals for the Third Circuit stated that, "[f]ortunately, there is a prevailing practice by government attorneys of delivering Jencks [Act] material to defense counsel sufficiently in advance of the conclusion of direct examination to obviate trial interruptions solely to permit defense counsel to study the disclosures". *Id.* at 773 n. 5. We agree with the Court's conclusion in *Murphy* that "[t]hat is a salutary practice and we encourage it". *Id.*

4. For discussions of the unsettled nature of this issue, see *Deutsch,* 373 F.Supp. at 291 & nn. 5 & 6 (citing cases); Nakell, *Criminal Discovery for the Defense and the Prosecution—The Developing Constitutional Considerations,* 50 N.C.

L.Rev. 437, 452–53 (1972); Comment, *The Prosecutor's Duty to Disclose: From* Brady *to* Agurs *and Beyond,* 69 J.Crim.L. & Criminology 197, 217–19 (1978); Comment, Brady v. Maryland *and the Prosecutor's Duty to Disclose,* 40 U.Chi.L.Rev. 112, 117–20 (1972); Note, *The Prosecutor's Duty to Disclose After* United States v. Agurs, 1977 U.Ill.L.F. 690, 691.

5. In *Herberman,* 583 F.2d at 229, this Court held that *Brady* requires that any exculpatory testimony given by grand jury witnesses whom the government does not plan to call as witnesses at trial must be disclosed to the defendant at trial. The Court stated that the prosecutor has a duty "to request that a court review material which could conceivably be labeled *Brady* material before the trial is finished". *Id.*

**860**

831, 95 S.Ct. 55, 42 L.Ed.2d 57; *United States v. Harris,* 5 Cir. 1972, 458 F.2d 670, *cert. denied,* 409 U.S. 888, 93 S.Ct. 195, 34 L.Ed.2d 145; *United States v. Montos,* 5 Cir. 1970, 421 F.2d 215, *cert. denied,* 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532. In each of these cases, this Court held that the prosecutor's compliance with the Jencks Act provided timely disclosure under *Brady.* Several of these cases contain broad language suggesting that the timing provisions of the Jencks Act do not conflict with *Brady.*[6] In *Harris,* however, this Court recognized "that *Brady* and the Jencks Act might in some circumstances be in substantive conflict on the general issue of the production of government evidence". 458 F.2d at 677. Nonetheless, the Court in *Harris* held that the government's failure in that case to make pretrial disclosure of the grand jury testimony of a government witness did not violate due process because it did not prejudice the defendant. *Id.* at 676–77.[7] The *Harris* analysis comports with this court's recent recognition of the principle that *"Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation". *United States v. Beasley,* 576 F.2d at 630.

Our prior cases might be read as holding that *Brady* and the timing provisions of the Jencks Act are compatible as a matter of law. Alternatively, they might hold that *Brady* would override the Jencks Act in cases where lack of pretrial discovery resulted in prejudice to the defendant "of substantial Due Process character". *Harris,* 458 F.2d at 677. *Compare United States v. Felts,* 5 Cir. 1974, 497 F.2d 80, 82, *cert. denied,* 419 U.S. 1051, 95 S.Ct. 628, 42 L.Ed.2d 646; *United States v. Kaplan,* 3

Cir. 1977, 554 F.2d 577, 579–80; Comment, *The Prosecutor's Duty to Disclose: From Brady to Agurs and Beyond,* 69 J.Crim.L. & Criminology 197, 218–20 (1978). We need not choose between these competing approaches, however, because it is clear that the appellees were not prejudiced by the allegedly tardy disclosure of Aurillio's grand jury testimony.

Aurillio's grand jury testimony would have been useful to the appellees prior to trial only because it indicates that Aurillio was a potential exculpatory witness for the defense. The defendants surely knew, however, that Aurillio was a potential witness and might give exculpatory testimony. Aurillio was a partner of Fred Campagnuolo and was acquainted with the other defendants. He was named in the indictment as an unindicted co-conspirator. In addition, in September 1975 the government sent a letter to Fred Campagnuolo's counsel informing him that Aurillio had given grand jury testimony that was exculpatory.[8] In December 1975, Aurillio was residing in the Palm Beach County Jail. To secure his presence at a suppression hearing in this case, the government sought, and the district judge granted, a Writ of Habeas Corpus Ad Testificandum. In the government's application for the writ, it referred to Aurillio as a material witness for the United States. The application and the writ are both contained in the record in this case, of course. Counsel for all defendants were present at the December 1975 suppression hearing. During that hearing, the prosecutor revealed that, based on Aurillio's testimony before the grand jury as an immunized witness, the government had de-

---

**6.** *See Scott,* 524 F.2d at 467 ("[t]his Court and others have recognized that the rule announced in *Brady* is not a pretrial remedy and was not intended to override the mandate of the Jencks Act"); *Frick,* 490 F.2d at 671 ("[n]or is *Brady* applicable at pre-trial stages"); *Montos,* 421 F.2d at 221 n. 5 ("[w]e do not read *Brady* to override the mandate of the Jencks Act . . at pretrial hearings on motions to suppress").

**7.** *See also Scott,* 524 F.2d at 468 ("the defendant's right to impeach the witness was fully satisfied by the opportunity for cross-examina-

tion"); *Wertis,* 505 F.2d at 685 ("[n]or . . . does appellant appear to have been harmed by the timing of disclosure").

**8.** The government asserts that in June 1975 it sent a disclosure letter to Gougules's counsel and to the Campagnuolos's joint counsel. These letters are not in the record, however. In September 1975, Fred Campagnuolo obtained separate counsel, and the government sent the letter referred to in the text to that new counsel.

termined that it had insufficient evidence to bring a prosecution under 18 U.S.C. § 1955, which outlaws the operation of a gambling business by five or more persons that is illegal under state law. Record at 275–76, 284, 287–88.

 It is not surprising, then, that before the district judge the defendants made no showing of any prejudice arising out of the government's failure to provide them with Aurillio's grand jury testimony until the day before the scheduled start of trial.[9] Furthermore, as this Court has stated, "the government is not obliged under *Brady* to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself". *United States v. Prior,* 5 Cir. 1977, 546 F.2d 1254, 1259. *See United States v. Cravero,* 5 Cir. 1976, 545 F.2d 406, 420, *cert. denied,* 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377. The government's timing of disclosure, then, did not violate *Brady.* It follows that the district court's standing discovery order requiring earlier disclosure was invalid as to Aurillio's grand jury testimony, since the order was not mandated by *Brady* and was barred by the Jencks Act.[10]

## C. The Telephone Conversations

On the day before trial was scheduled to begin, the government presented to the counsel for Fred Campagnuolo the evidence of the forty-two telephone calls received by the FBI agent who reconnected Campagnuolo's telephone during the search of his apartment. The district judge suppressed this evidence on two grounds. First, he determined that the evidence was obtained in violation of the wiretap provisions of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520. Second, he held that the failure to disclose the "manner and means" by which the government obtained the evidence violated the standing discovery order.

*1. The wiretap issue.* Federal law provides that evidence obtained by law enforcement officers through the interception of wire or oral communications is inadmissible unless the officers obtained judicial authorization for the interception. 18 U.S.C. §§ 2515–2518. The district judge noted that the FBI never obtained judicial authorization for the agent's actions in reconnecting the telephone and receiving the calls. The judge then held that, because the agent's actions constituted an interception under Title III, the evidence of the calls must be suppressed. We disagree.

In *United States v. Kane,* 5 Cir. 1971, 450 F.2d 77, *cert. denied,* 405 U.S. 934, 92 S.Ct. 954, 30 L.Ed.2d 810, a federal agent conducting a search of the premises of a suspected bookie under the authority of a valid warrant answered the suspect's phone for four hours, taking bets and dispensing gambling information. The defendant argued that the agent's conduct constituted an un-

**9.** During the hearing on the motion to dismiss the indictment, the district judge asked the counsel for Fred Campagnuolo whether the allegedly tardy disclosure of Aurillio's grand jury testimony had prejudiced his client. The counsel answered that "as far as trial preparation, Your Honor, at this time I'm not able to envision what prejudice—the only prejudice is the prejudice to the system of justice in the Southern District of Florida where this Court for many years, now, has taken a favorable step in providing for a standing discovery order and those are supposed to be complied with". Record at 479. The counsel for John Campagnuolo adopted this argument, also. Record at 481. The counsel for Gougules argued only that, had he known of Aurillio's grand jury testimony, he would have subpoenaed Aurillio as a defense witness. Record at 480. That counsel failed to show that Aurillio was not available to testify, however, and there are indications in the rec-

ord that Aurillio was a prospective government witness. During the oral argument before this Court, counsel for all appellees admitted that they had shown no prejudice resulting from the government's timing of disclosure.

**10.** The appellees contend that the government made no specific argument before the district court that the Jencks Act barred that court's order requiring early discovery of Aurillio's grand jury testimony, Even if that was the case, that omission would not result in a waiver of the government's objection to the dismissal of the indictment. The prosecutor did argue that dismissal was improper because the delay in disclosure did not prejudice the appellees. As our discussion in Part III *infra* makes clear, that argument raised the proper legal standard for deciding a motion to dismiss an indictment.

authorized "interception" under 47 U.S.C. § 605, the predecessor statute to Title III.[11] This Court summarily rejected the defendant's contention by citing the decision of the Court of Appeals for the Seventh Circuit in *United States v. Pasha,* 7 Cir. 1964, 332 F.2d 193, *cert. denied,* 379 U.S. 839, 85 S.Ct. 75, 13 L.Ed.2d 45, 450 F.2d at 84–85.[12]

In *Pasha,* the Court held that "[i]nterception connotes a situation in which by surreptitious means a third party overhears a telephone conversation between two persons". 332 F.2d at 198. Therefore, held the Court, no "interception" occurred when a federal agent conducting a valid search of the premises of a suspected bookie answered a ringing telephone, listened to what the caller had to say, and impersonated the intended recipient of the call. In support of this holding, the Court quoted a decision of the Supreme Court of New Jersey on the same issue:

> "In the case before us, there was no tampering with the established means of communication. Indeed the officer was the immediate party to the call. The bettor intended his words to reach the officer, albeit the bettor thought he was someone else. Thus the officer did not 'intercept' a message while it was *en route* to another; there was no other on the line."

332 F.2d at 198 (quoting *State v. Carbone,* 1962, 38 N.J. 19, 183 A.2d 1).

The Court in *Pasha* also relied in part on the opinion of the Supreme Court in *Rathbun v. United States,* 1957, 355 U.S. 107, 109, 78 S.Ct. 161, 2 L.Ed.2d 134, which the Court read as impliedly approving a series of cases holding that § 605 did not bar a police officer conducting a valid search from answering a ringing telephone. 332 F.2d at 197. *Accord, Seeber v. United States,* 9 Cir. 1964, 329 F.2d 572, 575–77; *People v. Warner,* 1969, Cal.Ct.App., 270 Cal.App.2d 900, 76 Cal.Rptr. 160, 165; *Riley*

*v. State,* 1969, Del.S.Ct., 249 A.2d 863, 865, *cert. denied,* 395 U.S. 947, 89 S.Ct. 2016, 23 L.Ed.2d 465. *See generally* Annotation, Admissibility of Evidence Obtained by Wiretapping as Affected by § 605 of the Federal Communications Act (47 U.S.C. § 605)—Federal Cases, 20 L.Ed.2d 1718, 1743–44; Annotation, What Constitutes An "Interception" of a Telephone or Similar Communication Forbidden by Federal Communications Act [47 U.S.C. § 605] or Similar State Statutes, 9 A.L.R.3d 423, 431–34. *See also McNulty v. People,* 1971, 174 Colo. 494, 483 P.2d 946, 948; *People v. Roti,* 1971, 2 Ill.App.3d 264, 276 N.E.2d 480, 484; *Commonwealth v. DiSilvio,* 1975, 232 Pa.Super. 386, 335 A.2d 785, 786–87; *State v. White,* 1970, 107 R.I. 306, 267 A.2d 414, 416–17.

In enacting Title III, Congress rewrote the law of electronic eavesdropping. The government argues that nothing in Title III changes the *Pasha* holding that the actions of a police officer conducting a valid search who answers a ringing telephone do not constitute an "interception". We need not reach this contention to decide the wiretap issue in this case. While conducting a valid search, the agent in this case reconnected a disconnected telephone and received calls. Even if we assume that these actions constituted an "interception" under Title III, it is clear that they did not violate that statutory scheme.

Title III provides:

> It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication . . . .

18 U.S.C. § 2511(2)(c). In commenting on this provision, the Senate Judiciary Committee stated:

> Paragraph (2)(c) provides that it shall not be unlawful for a party to any wire or oral communication . . . to in-

---

11. 47 U.S.C. § 605 provided in part that "no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person . . . ."

12. This Court in *Kane* also rejected the argument that the agent's conduct in that case violated the Fourth Amendment. 450 F.2d at 85.

tercept such communication. It largely reflects existing law. Where one of the parties consents, it is not unlawful. . . "[P]arty" would mean the person actually participating in the communication. (*United States v. Pasha,* 332 F. [*sic*] 193 (7th), *certiorari denied,* 379 U.S. 839, 85 S.Ct. 75, 13 L.Ed.2d 45 (1964)).

S.Rep.No.1097, 90th Cong.2d Sess. (1968), *reprinted in* [1968] 2 U.S.Code Cong. & Admin.News, pp. 2112, 2182. It is clear from this passage that Congress intended to reaffirm the result in *Pasha* and make admissible communications to which a police officer is a party. We are constrained, therefore, to find no violation of Title III in this case.[13] *Accord, Flaherty v. State,* 1973, 255 Ark. 187, 500 S.W.2d 87, *cert. denied,* 415 U.S. 995, 94 S.Ct. 1599, 39 L.Ed.2d 893;[14] *State v. Vizzini,* 1971, 115 N.J.Super. 97, 278 A.2d 235. *See also State v. Licciardello,* 1969, 107 N.J.Super. 357, 258 A.2d 382.

*2. Violation of the discovery order.* The district court also suppressed the evidence of the telephone calls because the government had failed to adhere to the timetable of the standing discovery order in revealing the "manner and means" by which the government obtained this evidence. In making this decision, the district judge apparently relied on paragraph A.(5) of the discovery order, which requires production of documents and other tangible objects the government intended "to use as evidence at trial to prove its case in chief, or were obtained from or belonged to the defendant". The telephone calls are not tangible evidence, however. This evidence could be presented to the jury only through the testimony of the agent who received the calls.[15] We find no provision in the standing discovery order, then, that required the prosecutor to inform the appellees of the manner and means by which the government obtained this evidence. Furthermore,

13. We realize that § 2511(2)(c)'s exception for an interception by a law enforcement officer who is a party to a communication might seem to condone serious intrusions into privacy. Suppose, for example, that in response to a request by a police officer the telephone company electronically reroutes calls away from a telephone of a suspected bookie to a telephone manned by that officer. Under this scheme, a caller who dialed the bookie's telephone number would be connected with the officer's telephone. In answering the calls, the officer would pose as a bookie and, if his suspicions were accurate, would receive evidence of bookmaking. Since the officer would literally be a party to those calls, § 2511(2)(c) might appear to exempt his conduct from the prohibitions of Title III. It would seem that the officer's conduct would not escape the prohibition of unreasonable searches and seizures provided by the Fourth Amendment, however. *Cf. Kane,* 450 F.2d at 85; Fishman, *The Interception of Communications Without a Court Order: Title III, Consent, and the Expectation of Privacy,* 51 St. John's L.Rev. 41, 63–66.

14. In *Flaherty v. State,* the Supreme Court of Arkansas held that the conduct of a police officer conducting a valid search of a suspected bookmaking operation who answered a ringing telephone and posed as a bookie did not violate Title III. The Court noted the cases holding that this conduct does not constitute an "interception" and then held that the conduct was exempted by § 2511(2)(c) because the officer was a party to the calls. Justice Douglas, joined by Justices Brennan and Marshall, dissented from the Supreme Court's denial of certiorari. 415 U.S. 995, 94 S.Ct. 1599, 39 L.Ed.2d 893. Justice Douglas contended that the Arkansas court's interpretation of the § 2511(2)(c) exception would allow the police to avoid the prohibitions of Title III by "becoming technical 'parties' to the conversations", 415 U.S. at 999, 94 S.Ct. at 1601, a fear we share, *see* note 13 *supra.* Because Justice Douglas contended that Congress intended § 2511(2)(c) to be interpreted "in light of existing constitutional standards", *id.* at 998, 94 S.Ct. at 1601, he found it

> unthinkable that a carefully drawn legislative plan can consistently with constitutional principles be frustrated in a manner leaving no legal protection for the privacy and security of telephone conversations as long as callers can be successfully deceived.

*Id.* at 999–1000, 94 S.Ct. at 1062. In this case, however, we must look not to any general intent of Congress that the courts interpret Title III consistently with the Constitution, but to Congress's specific intent to preserve the result in *Pasha* by allowing a police officer conducting a valid search to become a party to telephone calls on the premises searched. Because the appellees in this case do not challenge the conduct of the law enforcement officers on Fourth Amendment grounds, we do not reach that issue.

15. The agent's written report detailing the substance of the calls was hearsay, of course, and thus was not independently admissible to prove these conversations. F.R.Evid. 803(8).

because under the Jencks Act the agent's written report of the contents of the calls qualified as a "statement" by a prospective government witness, the prosecutor could not be required to give the appellees a copy of the report until after the agent testified at trial. 18 U.S.C. § 3500(a), (e)(1). In these circumstances, the district court abused its discretion when it suppressed the evidence of the telephone conversations.

### III.

### DISMISSAL OF THE INDICTMENT

 We held in Part II of this opinion that the government did not violate the duty of disclosure it owed to the appellees when, on the day before trial was scheduled to begin, it gave them the transcript of Aurillio's grand jury testimony and the FBI agent's report detailing the telephone calls the agent received on Fred Campagnuolo's telephone. In addition, we held that the agent's conduct involving these calls did not violate Title III. The only misconduct by the government that could support the district judge's dismissal of the indictment, then, was the government's failure to give timely disclosure of Fred Campagnuolo's statement denying knowledge of the envelope containing gambling slips that was found outside the window of his apartment. We find that omission to be an insufficient basis for dismissal of the indictment.

The district judge's oral opinion dismissing the indictment details the frustrations he has experienced because of the United States Attorney's frequent violations of the standing discovery order in many cases. The opinion indicates that the judge recognized the seriousness of the sanction he imposed.[16] His written order dismissing the indictment more succinctly covered the same terrain:

This Court was instrumental in the drafting of the Standing Discovery Order which has been in effect in this District since 1973. The Court is continuously presented with situations wherein the Government has not complied with the dictates of this order and is increasingly frustrated by the effect this non-compliance has upon the administration of justice in this District.

The Court does not find it necessary to decide whether any of the aforedescribed violations of the discovery order by the Government were intentional, for that is not the issue. Nor does the Court find it necessary to decide whether the defendants were in fact prejudiced by the Government's non-compliance in that the Court finds the nature of the Government's violations to be such that prejudice, is at least, inherently present. The Court concludes that the Government has failed to comply with three separate and distinct provisions of the Court's Standing Discovery Order and the Court's action in dismissing this Indictment represents an attempt by this Court to enforce the orders of this Court and to protect the rights of Defendants to the discovery

---

**16.** The district judge's oral opinion provided in part:

Frankly, it disturbs me more than I can tell you to announce the ruling that I am about to make. . . .

. . . . .

I cannot point the finger of fault at anybody or anything except the obvious lack of continuity of government counsel and the lack of assiduous concern and action in response to the Court's orders. Unfortunately, the Department of Justice does not have career men but their lawyers come and go, and everytime there is a change in the administration there is a substantial turnover and all kinds of problems. For example, in this Court in the last week, I have received three motions either seeking leave to withdraw as counsel for a defendant or for other relief, including a dismissal of the indictment because of the unavailability of the Assistant United States Attorney for conference and the failure of the government to produce material that has been required to be produced by this standing discovery order, and I have written three letters to our newly appointed United States Attorney and to the Attorney General of the United States to try to call attention to the problems that we are experiencing in this Court, that I am experiencing.

It is ordered and adjudged that the indictment and each and every count thereof as it pertains to each of these defendants is hereby dismissed for the reasons previously stated.

materials to which they are entitled. Further the Court seeks to establish firmly in this case the underlying purpose for the Standing Discovery Order which is, basic fairness and justice.

Record at 452–53.

■ The aims of the district judge were laudable. The supervisory powers of a district judge, however, allow him to impose the extreme sanction of dismissal of an indictment with prejudice only in extraordinary situations. *See* the thoughtful discussion in *United States v. Baskes,* 1977, N.D. Ill., 433 F.Supp. 799, 804–07. For this reason, we have held that a district judge may dismiss an indictment with prejudice because of misconduct by the government only if that misconduct actually prejudiced the defendant. *United States v. Acosta,* 5 Cir. 1976, 526 F.2d 670, *cert. denied,* 426 U.S. 920, 96 S.Ct. 2625, 49 L.Ed.2d 373. The appellees made no argument before the district judge that the untimely disclosure of Fred Campagnuolo's statement prejudiced them. During oral argument before this Court, they admitted that none of the government's alleged violations of the discovery order redounded to their prejudice. We must disagree, then, with the district judge's conclusion that prejudice was "inherently present".

Because of the absence of any prejudice, we are constrained to reverse the district judge's dismissal of the indictment.

REVERSED AND REMANDED.

APPENDIX: RULE 16

**(a) Disclosure of Evidence by the Government.**

**(1) Information Subject to Disclosure.**

**(A) Statement of Defendant.** Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government; the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent; and recorded testimony of the defendant before a grand jury which relates to the offense charged. Where the defendant is a corporation, partnership, association or labor union, the court may grant the defendant, upon its motion, discovery of relevant recorded testimony of any witness before a grand jury who (1) was, at the time of his testimony, so situated as an officer or employee as to have been able legally to bind the defendant in respect to conduct constituting the offense, or (2) was, at the time of the offense, personally involved in the alleged conduct constituting the offense and so situated as an officer or employee as to have been able legally to bind the defendant in respect to that alleged conduct in which he was involved.

**(B) Defendant's Prior Record.** Upon request of the defendant, the government shall furnish to the defendant such copy of his prior criminal record, if any, as is within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government.

**(C) Documents and Tangible Objects.** Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of his defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

**(D) Reports of Examinations and Tests.** Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph any results or reports of physical or mental

examinations, and of scientific tests or experiments, or copies thereof, which are within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, and which are material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial.

**(2) Information Not Subject to Disclosure.** Except as provided in paragraphs (A), (B), and (D) of subdivision (a)(1), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or other government agents in connection with the investigation or prosecution of the case, or of statements made by government witnesses or prospective government witnesses except as provided in 18 U.S.C. § 3500.

**(3) Grand Jury Transcripts.** Except as provided in Rule 6 and subdivision (a)(1)(A) of this rule, these rules do not relate to discovery or inspection of recorded proceedings of a grand jury.

. . . .

**(c) Continuing Duty to Disclose.** If, prior to or during trial, a party discovers additional evidence or material previously requested or ordered, which is subject to discovery or inspection under this rule, he shall promptly notify the other party or his attorney or the court of the existence of the additional evidence or material.

**(d) Regulation of Discovery.**

**(1) Protective and Modifying Orders.** Upon a sufficient showing the court may at any time order that the discovery or inspection be denied, restricted, or deferred, or make such other order as is appropriate. Upon motion by a party, the court may permit the party to make such showing, in whole or in part, in the form of a written statement to be inspected by the judge alone. If the court enters an order granting relief following such an ex parte showing, the entire text

of the party's statement shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.

**(2) Failure to Comply With a Request.** If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place and manner of making the discovery and inspection and may prescribe such terms and conditions as are just.