[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17311
Non-Argument Calendar
_____

D.C. Docket No. 4:15-cr-00133-KOB-JHE-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MIGUEL MANRIQUEZ,
a.k.a. 3 Eyes,
a.k.a. Paisa,
a.k.a. Juan Ricardo Campos,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(November 2, 2017)

Before ROSENBAUM, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

After a jury trial, Miguel Manriquez was convicted of conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A). On appeal, he argues that the government did not present sufficient evidence to identify him as one of the conspirators involved in a methamphetamine-distribution scheme operating within Georgia state prisons. He also argues that the district court abused its discretion by refusing to suppress a photograph of a tattoo on his back that the government belatedly disclosed to him in violation of the court's discovery order. After careful review, we affirm.

## I.

We review *de novo* the sufficiency of the evidence to support a criminal conviction. *United States v. Davis*, 854 F.3d 1276, 1292 (11th Cir. 2017), *petition for cert. filed*, (U.S. June 15, 2017) (No. 16-9642). "In doing so, we view the evidence in the light most favorable to the government and draw all reasonable inferences and credibility determinations in favor of the jury's verdict." *Id.* (internal quotation marks omitted). Our inquiry is limited to whether a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt. *Id.* The evidence need not exclude every hypothesis of innocence, and the jury is free to choose between reasonable constructions of the evidence. *United States v. Rodriguez*, 732 F.3d 1299, 1303 (11th Cir. 2013).

2

**A.**

We begin by summarizing the trial evidence. As a result of George O'Leary's arrest for trafficking in methamphetamine and his subsequent decision to cooperate with the authorities, law enforcement became aware of a methamphetamine-distribution scheme operating within the Georgia prison system. O'Leary told investigators that he had been buying large amounts of methamphetamine from someone he knew as "Francisco," who was somewhere in the Georgia prison system. According to O'Leary, Francisco coordinated drug deals using a cell phone, directing O'Leary where to pick up the drugs and how to make payment. From various pieces of information obtained during the investigation, investigators were able to identify Francisco as Jose Rolando Arroyo Balcazar ("Arroyo"), who was housed in Georgia's Wilcox State Prison.

As part of the investigation, O'Leary made several recorded calls to Arroyo to set up controlled buys of methamphetamine. These controlled buys led to the arrests of Arroyo's sister, whose house was often used as a rendezvous point, and Yesenia Montufar, who ran drugs for Arroyo. In addition to these recorded calls, investigators obtained a wiretap to monitor communications to and from one of the cell phones used by Arroyo.

O'Leary and Montufar both testified at Manriquez's trial. They each explained that Arroyo introduced them by phone to someone named "Miguel." At

3

one point, Arroyo told O'Leary that Miguel was his new methamphetamine supplier. Thereafter, O'Leary spoke with Miguel several times by phone. During one conversation, O'Leary talked to Miguel about sending him $400 for methamphetamine. During another call, O'Leary and Miguel discussed wiring money, and Miguel mentioned the name "Carmen Manriquez."

Montufar likewise was introduced to someone named "Miguel" by Arroyo. She knew Arroyo because her brother was in prison with him. In addition to running drugs for Arroyo outside the prison, Montufar also smuggled things into the prison, such as cell phones and sometimes drugs. After Arroyo introduced her to Miguel, whom Arroyo also referred to as "Three Eyes," Montufar spoke with Miguel on the phone. Miguel asked Montufar to call him "Angel." Angel never told Montufar where he was located, but Arroyo told her that he was in Calhoun State Prison. In one phone call intercepted during the wiretap, Miguel referred to himself as "Three Eyes" and stated that he was in "Calhoun."[1]

Based on information obtained during the investigation, such as the names "Miguel" and "Manriquez" being mentioned, along with references to Calhoun State Prison, investigators began looking for "Miguel Manriquez." And they found someone by that name—the defendant—who was incarcerated in Calhoun State Prison. Further investigation revealed that Manriquez listed Carmen Manriquez as

---

[1]Investigators determined that the individual with whom O'Leary, Montufar, and Arroyo communicated used the same cell-phone number throughout the course of the investigation.

4

his brother and contact person, and that a known alias of Manriquez was "Miguel Angel Manriquez."

Montufar's testimony also linked Angel with a back tattoo of the Virgin Mary. Montufar explained that, on one occasion, she and Angel had been talking on the phone about tattoos. Angel said that he had a tattoo of the Virgin Mary on his back and he sent Montufar a picture of it with his cell phone. A similar tattoo was found on Manriquez's back after his arrest in connection with this case. As part of the booking process at the Hoover City Jail, a corrections officer took a picture of a tattoo on Manriquez's back. The tattoo was of the Virgin Mary with the words "Three Eyes" above it. Montufar testified that the tattoo in the booking photograph looked like the tattoo that Angel sent her.

Both Montufar and Manriquez were held in the Hoover City Jail on these charges. Montufar testified that she spoke to Angel through a door in the jail and recognized his voice as the person she spoke to on the phone. She did not see him, however. Montufar also identified Angel's voice on a call between Arroyo and Miguel, associating Angel's voice with Miguel. She was not on the call, but she recognized his voice from her own conversations with him.

## B.

In arguing that he should have been granted a judgment of acquittal, Manriquez's central contention is that the government's evidence failed to prove

5

beyond a reasonable doubt that he was the person identified in the evidence variously as Miguel, Angel, and Three Eyes. He points out that O'Leary and Montufar could not identify him at trial and did not connect him with the voice they heard on the phone. As a result, he asserts, the government failed to prove that he was "the voice on the phone."

Although no direct evidence connected Manriquez to the methamphetamine-distribution conspiracy, the government provided sufficient circumstantial evidence to identify Manriquez as "the voice on the phone." "The test for sufficiency of evidence is identical regardless of whether the evidence is direct or circumstantial, and no distinction is to be made between the weight given to either direct or circumstantial evidence." *United States v. Mieres-Borges*, 919 F.2d 652, 656–57 (11th Cir. 1990). But "[w]hen the government relies on circumstantial evidence, reasonable inferences, not mere speculation, must support the conviction." *United States v. Mendez*, 528 F.3d 811, 814 (11th Cir. 2008).

Here, reasonable inferences support Manriquez's conspiracy conviction. O'Leary and Montufar's testimony, along with corroborating recordings and transcripts, established that the "voice on the phone" was known as Miguel, Angel, or Three Eyes, that he was incarcerated at Calhoun State Prison, that he had a tattoo of the Virgin Mary on his back, and that he knew someone named Carmen Manriquez. Other evidence established that Manriquez was incarcerated at

6

Calhoun State Prison during the relevant period, that his brother's name is Carmen Manriquez, that a known alias of his was Miguel *Angel* Manriquez, that he has a tattoo of the Virgin May on his back with the words "Three Eyes" above it, and that Montufar identified his voice at the Hoover City Jail where he was being held in connection with this offense. Given the substantial overlap between the facts known about the voice on the phone and Manriquez and the absence of any reasonable possibility of mere coincidence, a jury could reasonably infer, beyond a reasonable doubt, that the voice identified on the phone calls as Miguel, Angel, and Three Eyes belonged to Manriquez.

Accordingly, the district court properly denied Manriquez's motion for judgment of acquittal.

Manriquez raises a new argument on appeal that was not presented to the district court at trial, though he does so only in passing and without citing any legal authority. Even assuming that this argument has been properly raised on appeal, it is reviewed for plain error, which Manriquez cannot establish. *See United States v. Hunerlach*, 197 F.3d 1059, 1068–69 (11th Cir. 1999) (new grounds for acquittal not raised to the district court are reviewed for plain error).

Manriquez asserts that, even if evidence was sufficient to prove that the voice on the phone was his, the government failed to present evidence that he was part of a conspiracy to distribute or possess with the intent to distribute

7

methamphetamine.  He points out that there is no evidence that he ever actually or constructively possessed methamphetamine.

But the government did not need to prove that Manriquez possessed methamphetamine in order to sustain a conspiracy conviction.  "To sustain a conviction under 21 U.S.C. § 846, the government must prove (1) that an illegal agreement existed to possess with intent to distribute a controlled substance; (2) that the defendant knew of the agreement; and (3) that the defendant knowingly and voluntarily joined the agreement."  *United States v. Barron-Soto*, 820 F.3d 409, 418 (11th Cir. 2016).  O'Leary's testimony along with corroborating recordings and transcripts demonstrate that Manriquez was knowingly involved in a conspiracy to distribute methamphetamine.  According to O'Leary, Arroyo said that Manriquez was his new methamphetamine supplier and, thereafter, O'Leary spoke with Manriquez about sending him $400 for methamphetamine.  It was not plainly erroneous for the district court to fail to *sua sponte* grant a judgment of acquittal on this ground.

## II.

Manriquez maintains that the government should not have been able to use at trial the booking photograph of his back tattoo, which provided a clear link between Manriquez and the person Montufar knew as Angel, because the government failed to disclose the photograph by the deadline in the district court's

discovery order.  He argues that the district court abused its discretion by failing to suppress the photograph.

In a criminal trial, the government must permit the defendant to inspect and to copy or photograph certain documents, including photographs, that are within the government's control if they are material to preparing the defense or the government intends to use them in its case-in-chief at trial.  Fed. R. Crim. P. 16(a)(1)(E).  In this case, the district court had entered a discovery order requiring the government to disclose any such evidence at least fourteen days before trial.  And it is undisputed that the government violated the order by disclosing the booking photograph eleven days before trial.  But the district court denied Manriquez's motion to prevent the government from introducing the evidence at trial.  *See* Fed. R. Crim. P. 16(d)(2) (providing that that the court may sanction a party for failure to comply with Rule 16, including by granting a continuance or prohibiting the party from introducing the undisclosed evidence).

We review the district court's decision whether to impose a sanction for the violation of a discovery order for an abuse of discretion.  *United States v. Euceda-Hernandez*, 768 F.2d 1307, 1311–12 (11th Cir. 1985); *see United States v. Campagnuolo*, 592 F.2d 852, 858 (5th Cir. 1979) (district courts have "broad

discretion to administer sanctions for the violation of a valid discovery order").[2]  A discovery violation does not automatically prohibit the use of unrevealed evidence. *United States v. Rodriguez*, 799 F.2d 649, 652 (11th Cir. 1986).  We will reverse a conviction based on the government's violation of a discovery order only if the violation affected the defendant's substantial rights.  *United States v. Rivera*, 944 F.2d 1563, 1566 (11th Cir. 1991).  Prejudice is measured mainly by how the violation affected the defendant's ability to prepare a defense.  *United States v. Chastain*, 198 F.3d 1338, 1348 (11th Cir. 1999).

Here, Manriquez has not shown substantial prejudice due to the district court's refusal to exclude the booking photograph.  While the evidence was important to the government's case, the government missed its deadline by just three days, and Manriquez had eleven days before trial to develop a defense strategy in response to the evidence.  Manriquez asserts that the government's belated disclosure prevented him from taking certain actions, such as researching statistics about the prevalence of Virgin Mary tattoos or producing a photo lineup of similar tattoos to present to Montufar under cross examination, but he fails to explain how an additional three days would have made a difference in that regard.  Moreover, the district court found that "defense counsel was on notice that [Montufar] had made reference to the tattoo, so he at least had some inkling that

---

[2] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

that might be at issue even before the photograph was disclosed."[3]    "More importantly, if [Manriquez] had, in fact, been prejudiced by the delayed disclosure of [the photograph], he should have moved for a continuance."  *See Rivera*, 944 F.2d at 1566.  But he did not, and instead elected to proceed to trial.

In light of the relatively minor violation of the district court's discovery order, the court acted well within its discretion by refusing to impose the "extreme sanction" of exclusion of the evidence.  *United States v. Rodriguez*, 765 F.2d 1546, 1557 (11th Cir. 1985) (internal quotation marks omitted).  Manriquez has not shown that the belated disclosure prejudiced his ability to prepare a defense.  *See Chastain*, 198 F.3d at 1348.  While it may have been within the district court's discretion to exclude the evidence despite a lack of prejudice, *see Campagnuolo*, 592 F.2d at 858 ("We find no abuse of discretion where, as here, a district judge for prophylactic purposes suppresses evidence that, under a valid discovery order, the government should have disclosed earlier, even if the nondisclosure did not prejudice the defendants."), the absence of prejudice to Manriquez's substantial rights precludes granting relief on appeal.  *See Rivera*, 944 F.2d at 1566

## III.

In sum, sufficient evidence supports Manriquez's methamphetamine-conspiracy conviction, and the district court did not abuse its discretion by

---

[3] Manriquez appears to dispute that fact on appeal, but he did not object to or dispute that finding below, and he points to nothing in the record to contradict it now.

11

allowing the government to introduce at trial a photograph of a tattoo on Manriquez's back that was not timely disclosed by the deadline in the court's discovery order.

We therefore **AFFIRM** Manriquez's conviction.